[Cite as *State v. Rubsam*, 2019-Ohio-2153.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 18CA0089-M |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RAND RUBSAM | | WADSWORTH MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 18TRC01234-A |

DECISION AND JOURNAL ENTRY

Dated: June 3, 2019

---

CALLAHAN, Presiding Judge.

{¶1} Appellant, Rand Rubsam, appeals the trial court's order that denied his motion to suppress. This Court affirms.

I.

{¶2} On April 2, 2018, Trooper Harold McCumbers stopped Mr. Rubsam after he observed his vehicle driving left of center on Wall Road in Medina County. As a result of evidence gained during and after the traffic stop, Mr. Rubsam was charged with driving under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), driving with a prohibited concentration of alcohol per liter of breath in violation of R.C. 4511.19(A)(1)(d), and failing to maintain his lane of travel in violation of R.C. 4511.25(A). Mr. Rubsam moved to suppress the evidence gained as a result of the stop, arguing that Trooper McCumbers did not have a reasonable, articulable suspicion that a crime was being committed. The trial court denied the motion.

{¶3} Mr. Rubsam pleaded no contest to driving under the influence of alcohol, and the trial court sentenced him to sixty days in jail with fifty days suspended, placed him on probation for two years, suspended his license for two years, and fined him $625. Mr. Rubsam filed this appeal challenging the order that denied his motion to suppress.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY DENYING THE DEFENDANT'S MOTION TO SUPPRESS, WHICH MOTION ASSERTED THE ARRESTING OFFICER LACKED REASONABLE SUSPICION TO STOP AND DETAIN THE DEFENDANT ON THE DATE OF HIS ARREST, SAID DETENTION BEING IN VIOLATION OF RIGHTS SECURED TO THE DEFENDANT UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶4} Mr. Rubsam's assignment of error argues that the trial court erred by denying his motion to suppress. Specifically, he reasons that because his conduct may have fallen into an exception to R.C. 4511.25(A), Trooper McCumbers could not have had a reasonable, articulable suspicion that he violated that statute. This Court does not agree.

{¶5} This Court's review of the trial court's ruling on the motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court acts as the trier of fact during a suppression hearing and is best equipped to evaluate the credibility of witnesses and resolve questions of fact. *Id.*; *State v. Hopfer*, 112 Ohio App.3d 521, 548 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653 (4th Dist.1994). Consequently, this Court accepts a trial court's findings of fact if supported by competent, credible evidence. *Burnside* at ¶ 8. Once this Court has determined that the trial court's factual findings are supported by the evidence, we consider the trial court's legal

conclusions de novo. *See id.* In other words, this Court then accepts the trial court's findings of fact as true and "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶6} The investigatory stop of an automobile is a seizure for purposes of the Fourth Amendment and, consequently, must be based on a law enforcement officer's reasonable suspicion "that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). In justifying the stop, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The touchstone of this analysis is whether the officer acted reasonably. *State v. Lozada*, 92 Ohio St.3d 74, 78-79 (2001). This question is evaluated in light of the totality of the circumstances surrounding the stop. *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. This is because:

> The reasonable suspicion necessary for such a stop * * * eludes precise definition. Rather than involving a strict, inflexible standard, its determination involves a consideration of "the totality of the circumstances." *United States v. Cortez*, 449 U.S. 411, 417 (1981). Under this analysis, "both the content of information possessed by police and its degree of reliability" are relevant to the court's determination. *Alabama v. White*, 496 U.S. 325, 330 (1990).

*Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999). "[W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question." *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996).

{¶7} Mr. Rubsam has not challenged the trial court's findings of fact, so this Court accepts them as true and reviews the trial court's legal conclusions de novo. *See Burnside* at ¶ 8. The trial court found that Mr. Rubsam did not demonstrate any signs of erratic driving—and that there was no reason for Trooper McCumbers to stop his vehicle—before turning onto Wall Road. The trial court also noted that Mr. Rubsam activated his blinker before making this turn and that the turn itself was not wide. Regarding Mr. Rubsam's actions once he turned onto Wall Road, however, the trial court found that he "drove the entire way down Wall Road in the middle of the road. He did not favor the right side and went down the center of the road the entire way." The trial court observed that Mr. Rubsam did not need to move toward the center of the road in order to cross a one-lane bridge located approximately one mile down the road. At the same time, however, the trial court noted that "the township must also view [the width of Wall Road] as * * * too narrow to stripe because there are no center lines and there are no fog lines." The trial court's order did not include a finding regarding the width of Wall Road, nor was any measurement presented on that point during the hearing apart from Trooper McCumbers' agreement that estimating the road width at eighteen feet, which was the width suggested by defense counsel, was "fair." The trial court concluded that Trooper McCumbers articulated a reasonable suspicion that at the time of the stop, Mr. Rubsam was in violation of R.C. 4511.25(A), which requires vehicles to be driven on the right half of "all roadways of sufficient width[.]"

{¶8} Whether the subject of a stop can be convicted of the offense is a different question than whether an officer acted reasonably in light of the facts and circumstances known at the time of the stop. *See Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 14-15. The purpose of a suppression hearing related to a traffic stop is not to determine whether

the defendant is guilty of violating a criminal statute, but whether the officer who conducted the traffic stop had a reasonable, articulable suspicion of criminal activity at the time. *State v. Hatfield*, 5th Dist. Morrow No. 10-CA-8, 2011-Ohio-597, ¶ 38. Consequently, an officer who reasonably suspects that a traffic violation has occurred need not determine whether a driver's conduct might be excused before initiating a traffic stop. *See Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, at ¶ 16-17.

{¶9} In *Mays*, the Ohio Supreme Court considered whether a police officer who witnessed a driver crossing a white edge line on the roadway was justified in stopping the driver for violating R.C. 4511.33 without any indication that the motorist was driving in an unsafe manner. *Id*. at ¶ 1, 9. The statute at issue required vehicles to be "'driven, as nearly as is practicable, entirely within a single lane or line of traffic'" and prohibited "'mov[ing] from such lane or line until the driver has first ascertained that such movement can be made with safety.'" *Id*. at ¶ 11, quoting R.C. 4511.33(A)(1). The defendant argued that the stop was not justified because "there was no reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane 'as nearly as [was] practicable.'" (Alterations in original.) *Mays* at ¶ 17. The Court recognized that "R.C. 4511.33 does provide for certain circumstances in which a driver can cross a lane line without violating the statute," but emphasized that "the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop." *Id*.

{¶10} This reasoning has been applied to R.C. 4511.25(A), which formed the basis for the traffic stop at issue in this case. That statute provides that "[u]pon all roadways of sufficient

width, a vehicle * * * shall be driven upon the right half of the roadway," except as provided by five exceptions:

> (1) When overtaking and passing another vehicle proceeding in the same direction, or when making a left turn under the rules governing such movements;
>
> (2) When an obstruction exists making it necessary to drive to the left of the center of the highway; provided, any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;
>
> (3) When driving upon a roadway divided into three or more marked lanes for traffic under the rules applicable thereon;
>
> (4) When driving upon a roadway designated and posted with signs for one-way traffic;
>
> (5) When otherwise directed by a police officer or traffic control device.

R.C. 4511.25(A)(1)-(5). The circumstances described by R.C. 4511.25(A)(1)-(5) are legal "exceptions which, if present, excuse a failure to comply with the requirement to remain right of the centerline." *State v. Pelham*, 6th Dist. Wood No. WD-13-020, 2013-Ohio-4524, ¶ 9. Consistent with *Mays*, an officer who reasonably suspects a violation of R.C. 4511.25(A) need not determine whether those circumstances are present before initiating a traffic stop based on failure to drive upon the right half of the roadway. *Pelham* at ¶ 9. *Compare State v. Carano*, 9th Dist. Summit No. 26544, 2013-Ohio-1633, ¶ 14 (concluding that a traffic stop based on R.C. 4511.25(A) was justified because the police officer observed the defendant weaving outside the lane of travel despite the defendant's objection that his lane of travel was obstructed). Mr. Rubsam's argument that Trooper McCumbers lacked reasonable suspicion to initiate a traffic stop because his conduct was excused by R.C. 4511.25(A)(2) and (5) is, therefore, not well-taken.

{¶11} In addition, the trial court's opinion that Trooper McCumbers relied on a mistake of fact or law does not support Mr. Rubsam's position. The Fourth Amendment's requirement of

reasonableness does not require perfection. *Heien v. North Carolina*, 574 U.S. 54, ___, 135 S.Ct. 530, 536 (2014) ("To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials[.]"). Consequently, neither a mistake of fact nor a mistake of law on the part of a law enforcement officer renders the grounds for a traffic stop unreasonable per se. *Id.* As the United States Supreme Court has explained:

> We have recognized that searches and seizures based on mistakes of fact can be reasonable. * * * The limit is that "the mistakes must be those of reasonable men."
>
> But reasonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

*Id.*, quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949). In applying this standard, the question is whether the officer's mistaken belief is objectively reasonable. *See State v. Spellacy*, 8th Dist. Cuyahoga No. 106909, 2019-Ohio-785, ¶ 27-35. Given that R.C. 4115.25(A) applies to roadways "of sufficient width," a law enforcement officer could, as the trial court noted, reasonably err with respect to facts or law in conducting a valid traffic stop on this basis.

{¶12} Mr. Rubsam's assignment of error is overruled.

III.

{¶13} Mr. Rubsam's assignment of error is overruled. The judgment of the Wadsworth Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, J.
CONCUR

CARR, J.
DISSENTING.

{¶14} I respectfully dissent. There was no evidence of erratic driving on the part of Rubsam until he turned onto Wall Road, at which point he began driving down the middle of the roadway. I agree that an officer need not consider whether the exceptions set forth under R.C. 4511.25(A)(1)-(5) are applicable prior to initiating a traffic stop for failure to drive upon the right half of the roadway. Regardless of the exceptions, however, R.C. 4511.25(A) mandates driving

upon the right half of the roadway "[u]pon all roadways of sufficient width[.]" Accordingly, whether the roadway here was "of sufficient width" was a vital consideration in analyzing the legality of the traffic stop. The trial court made no such finding regarding the width of Wall Road. As noted by the majority, the evidence at the hearing on this point was limited. Trooper McCumbers acknowledged that he did not measure the width of the roadway. When defense counsel suggested that he had, in fact, measured the width of the roadway and found that it was 18 feet wide, Trooper McCumbers suggested that was "fair." I am particularly troubled by the lack of a finding with respect to the width of the roadway given that the trial court specifically found that certain other observations by the officer lacked credibility. Under these circumstances, I would reverse the trial court's judgment as there was no evidence that the road was sufficiently wide.

APPEARANCES:

NATHAN A. RAY, Attorney at Law, for Appellant.

THOMAS J. MORRIS, Assistant Prosecuting Attorney, for Appellee.